April 17, 2006

Ms. Deborah Raleigh
557 California Avenue
Brick, New Jersey 08724

Mr. Patrick Raleigh
1205 ½ River Road
Apartment C
Belmar, New Jersey 07719

                Re:    Patrick Raleigh
                        Case No. 05-25054

                        Deborah Raleigh vs. Patrick Raleigh
                        Adversary No 05-2468
                        Trial: April 11, 2006

Dear Ms. Raleigh and Mr. Raleigh:

      Deborah Raleigh filed this complaint against the Debtor Patrick Raleigh seeking to have Mr. Raleigh's discharge denied under §727 (a)(4) and (6). Alternatively, she seeks to have debt awarded to her as part of a marriage dissolution determined to be non-dischargeable under §523 (a)(5) and (15).

1

We start with the 727 counts because if the discharge is denied, then there is no need to except particular debts from discharge.

### § 727(a)(4)

Section 727(a)(4)(A) provides the debtor will be denied discharge if:

(4) the Debtor knowingly and fraudulently, in or in connection with the case

(A) made a false oath or account....

To establish a § 727 (a)(4)(A) claim, the objector must prove that (1) the debtor knowingly and fraudulently made false oath or statement, and (2) the false oath or statement related to a material fact in the bankruptcy proceedings. Scimeca v. Umanoff, 169 B.R. 536 (D.N.J. 1993); *aff'd*, 30 F.3d 1488 (3d Cir. 1994). A false oath or statement is made when it occurs: (1) in the debtor's schedules; or (2) at an examination during the course of the proceedings. Scimeca at 542. A debtor's failure to report known information on the schedules is prima facie evidence of a false oath, since the schedules accompanying a debtor's bankruptcy petition are concluded with the statement: "I, [debtor], declare under penalty of perjury that I have read the foregoing schedules, consisting of [number] sheets, and that they are true and correct to the best of my knowledge, information and belief." See In re Tarle, 87 B.R. 376, 379 n4. (Bankr. W.D. Pa. 1988).

The "fraudulent" portion of § 727 (a)(4)(A) must be proven by evidence that suggests the debtor intended to defraud his creditors or his estate. Fraudulent intent can be inferred from the circumstantial evidence or by inferences drawn from a course of conduct. Scimeca, at 542-43 (citing In re Kisberg, 150 B.R. 354, 356 (Bankr. M.D. Pa. 1992)). However, the fact that relevant information is missing is, in itself, insufficient grounds revoke a discharge. The false statement must have been made or the information

withheld with an intent to deceive. In re Jones, 178 B.R. 1, 4 (Bankr. D.N.M.1995).

Circumstantial evidence of fraudulent intent may consist of proof of the size or value of the asset or proof that the Debtor knew of the asset in close proximity to the filing. In re Garcia, 88 B.R. 695, 705 n.19 (Bankr. E.D. Pa. 1988). Courts have held that a reckless disregard of both the serious nature of the information sought and the necessary attention to detail and accuracy in answering may rise to the level of fraudulent intent necessary to bar a discharge. Continental Bank v. Bobroff (In re Bobroff), 69 B.R. 295 (E.D. Pa. 1987); In re Mazzola, 4 B.R. 179 (Bankr. D. Mass. 1980).

Here, Ms. Raleigh presented several categories of debts that were overstated, two kayaks a truck and a boat that were not disclosed as assets, failure to list Ms. Raleigh as a co-debtor, failure to list overtime income, failure to indicate that some living expenses were shared, and failure to list regular contributions to a deferred compensation pension plan. Mr. Raleigh testified that the kayaks and boat belonged to a previous girlfriend, wer enot his and were no longer even in his possession. He indicated that he cannot accurately predict the amount of overtime he will get and has had much less overtime income in the past year because he did not get the snow work he did in years past. He swore that he is no longer co-habitating and no longer shares expenses. As far as deferred compensation and the amounts listed for other debts, he testified that he simply gave whatever documentation he had to his attorney and didn't fully understand the process.

There are undeniably some gaps and inconsistencies in Mr. Raleigh's testimony. The nature and amount of the inconsistencies at issue, however, do not rise to the level of supporting an allegation of fraudulent intent. Unlike the standard ona motion to deny exemption for failure to disclose assets or cooperate with the Trustee, the standard for denial of discharge is quite rigorous: intent or reckless

3

disregard. The standard of proof for actions brought under § 727(a)(4) is the "preponderance of the evidence" standard. Grogan v. Garner, 498 U.S. 279 (1991). The burden of proof, as in most adversary proceedings and civil matters, is on the plaintiff. Meridian Bank v. Alten, 958 F.2d 1226 (3d Cir. 1992). The Third Circuit has recognized that "[c]ompletely denying a Debtor his discharge, as opposed to avoiding a transfer or declining to discharge an individual debt pursuant to § 523, is an extreme step and should not be taken lightly." Rosen v. Bezner, 996 F.2d 1527, 1531 (3d Cir. 1993). The totality of the record does not suggest that the irregularities in Mr. Raleigh's petition and schedules are either material or indicative of fraudulent intent. The court will enter Judgment for the defendant on the 727(a)(4) count. This is without prejudice to the Trustee's rights to file and seek judgment under 727(a)(4), or any other section for that matter. It is merely a finding that the inconsistencies and inaccuracies presented by this plaintiff do not support the radical relief of denial of discharge under that section.

### § 727 (a)(6)

727(a)(6) calls for denial of a discharge if the Debtor has refused, in the case-

(A) to obey any lawful order of the court, other than an order to respond to a material question or to testify;

(B) on the ground of privilege against self-incrimination , to respond to a material question approved by the court or to testify, after the debtor has been granted immunity with respect to the matter concerning which such privilege was invoked or

(C) on a ground other than the properly invoked privilege against self-incrimnation , to respond to a matrial question approved by the court or to testify.

Sections B and C do no pertain here, as the court has not been asked to approve a question. The remaining

4

issue is whether the Debtor refused to obey a court order.

The word 'refused,' as used in § 727(a)(6)(A), must be distinguished from the word 'failed' which is used elsewhere in § 727(a). As a consequence, the mere failure of a debtor to obey a court's order, without more, is insufficient to deny or revoke a debtor's bankruptcy discharge." In re Patrick, 290 B.R. 306, 313 (Bankr.E.D.Mich.2003) (citations omitted) *as cited in* In re Rivera 338 B.R. 318, *329 (Bkrtcy.N.D.Ohio,2006)

The party objecting to discharge satisfies this burden by demonstrating the debtor received the order in question and refused to comply with its terms. Ireland, 325 B.R. at 838; In re Araujo, 292 B.R. 19, 24 (Bankr.D.Conn.2003). Such a showing then imposes upon the debtor an obligation to explain his non-compliance. Associates Commercial Corp. v. Reavis (In re Reavis), 92 B.R. 380, 383 (Bankr.W.D.Mo.1988); *United States of America v. Richardson (In re Richardson),* 85 B.R. 1008, 1011 (Bankr.W.D.Mo.1988); 6 Collier on Bankruptcy, ¶ 727.09[1], p. 727-50 (15th ed. Rev.2003). This ground for denial of discharge clearly includes orders requiring the debtor to produce documents relating to his or her financial condition. *Block v. Moss (In re Moss),* 258 B.R. 391, 404 (Bankr.W.D.Mo.2001); In re Robson, 154 B.R. 536, 539-540 (Bankr.E.D.Ark.1993) *as cited in* In re Foster 335 B.R. 709, *716 (Bkrtcy.W.D.Mo.,2006)

The planitff here alleges that the Debtor refused to obey a court order when he did not comply with a state court order to turn over a particular motor home, did not provide certain information ordered by the state court, refused to pay for his son's glasses and contacts and filed a joint tax return on his own in violation of a state court order. The problem with all of these allegations is that they do not relate to behaviour "in the case" as required by the statute. This court cannot deny a discharge because of alleged

5

failure to comply with the orders of another court. Judgment will be entered in favor of the Defendant, again, without prejudice to the Trustee rights to assert refusal to comply with lawful orders of this court.

### § 523(a)(5)

Section 523(a)(5) excepts from discharge any "debt owing to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record...." As became apparent from Mr. Raleigh's testimony, he acknowledges that the amounts identified in the order approving the divorce as alimony and support are not dischargeable. Judgment will be entered in favor of the plaintiff indicating that court-ordered alimony and support are not subject to discharge.

### § 523(a)(15)

Section 523(a)(15) contains four essential elements: 1) that the debt arose out of a domestic relations case and is set forth in an agreement or court order; 2) that the debt is not actually for alimony or support; 3) that the debtor lacks the ability to pay it; or 4) that discharging the debt would result in a benefit to the debtor which is greater than the detriment the creditor would suffer from discharge of the debt. The party seeking the determination of dischargeability, pursuant to § 523(a)(15), has the threshold burden of proof as to the applicability of this provision to the marital debt. *See* Rushlow, 277 B.R. at 220-21. In other words, a § 523(a)(15) movant needs to make a *prima facie* showing that the debt satisfies the first and second elements enumerated above.

The plaintiff here seeks a determination that approximately 3200 of the Debtor's share of the marital credit card debt and 1,494.76 of the Debtor's share of the debt to Bank of the West arose out of the divorce decree and were not in the nature of alimony and support. The plaintiff forthrightly admitted that

the debts at issue under this section were intended to equitably distribute debt accrued during the course of the marriage.

Once a creditor-plaintiff makes the *prima facie* showing that the debt in question fits within the threshold parameters of § 523(a)(15), the burden of proof then shifts to the debtor-defendant to rebut this presumption. *See* Rushlow, 277 B.R. at 221. To satisfy this rebuttal burden, a debtor must satisfy, by a preponderance of the evidence, one of the two prongs of the test. Either, pursuant to subparagraph (a)(15)(A) the debtor must show he is unable to pay the obligation, or, pursuant to subparagraph (A)(15)(B), the debtor must show, notwithstanding his or her ability to pay the obligation, the benefit to the debtor of discharging the debt outweighed the detriment the creditor would suffer from such discharge. *See,* Matter of Crosswhite, 148 F.3d 879 ($7_{th}$ Cir.1998); In re Molino, 225 B.R. 904 (B.A.P. $6_{th}$ Cir.1998); In re Gamble, 143 F.3d 223 (5th Cir.1998); In re Jodoin, 209 B.R. 132 (B.A.P. $9_{th}$ Cir.1997) *as cited in* In re Forant 2003 WL 22247203, *4 (Bkrtcy.D.Vt.,2003).

Here, the Debtor presented his own testimony that his income has declined since the filing of the petition and that he expects it to decline even further as his position may be at risk since he had to turn over title to his vehicle to the Trustee. He also testified that he never shared all living expenses and that to the extent that he may have shared them in the past, he no longer does. More tellingly, the Debtors schedues I and J indicate that he had a negative monthly income after expenses of over $350. While there is some question as to whether the Debtor's alimony and support obligations and auto insurance are counted as both payroll deductions and monthly expenditures and whether the Debtor will continue to need to make the truck payment deducted from his paycheck, the prospects that the Debtor will be able to pay these debt are nonetheless bleak. The evidence submitted by the plaintiff does nothing to refute the inability to pay

these debts that is evident from the Debtor's schedules.

To be sure, Ms. Raleigh is similarly unable to pay the debts in that the evidence presented suggests that she, too, is running a significant monthly deficit. Unfortunately for her, it is the Debtor who filed for bankruptcy protection. It is the Debtor's burden to establish either inability to pay or that the balance of hardships tips in his favor, not both. The court did not need to get to the issue of hardship balance because the Debtor's inability to pay these equitable distribution debts was evident from his sworn statements filed with the petition and his testimony in court.

## Conclusion

Matrimonial proceedings rarely result in two new family units that are as financially stable as the previously family unit may have been. Adding a bankruptcy filing to that mix almost always results in some hardship to the non-filing party. In this instance, the Debtor does not contest his alimony or support obligations. It is those very obligations, combined with his income and other expenses, that he claims render him unable to pay his share of the marital debt. The evidence presented suggests that his obligation to do so should not be excepted from the discharge to which he is entitled.

_____
KATHRYN C. FERGUSON, USBJ
US Bankruptcy Court